**ARMCO, INC., Plaintiff-Appellee,**

v.

**REPUBLIC STEEL CORPORATION, Whitaker & Merrell Co., Watson Podiak & Associates, Inc., Defendants-Appellants.**

**No. 82–3070.**

United States Court of Appeals, Sixth Circuit.

Argued March 25, 1983.

Decided May 19, 1983.

Rehearing and Rehearing En Banc Denied June 30, 1983.

R. Joseph Parker, Cincinnati, Ohio, Walter J. Blenko, Jr. (argued), Buell, Blenko, Ziesenheim & Beck, Pittsburgh, Pa., for defendants-appellants.

Albert E. Strasser (argued), Cincinnati, Ohio, for plaintiff-appellee.

Before KENNEDY and JONES, Circuit Judges, and BERTELSMAN, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant, Republic Steel Corporation,[1] appeals from an order of the district court entering judgment in favor of the plaintiff-appellee, Armco, Inc., in this action for patent infringement. Specifically, the district court found that an Armco-owned patent was valid, that that patent had been infringed by Republic and that $140 per ton of structural steel is a reasonable royalty to be paid for the use of the patented design. The appellant claims that the district court erred in making each of these findings. We disagree.

## I.

Republic and Armco are competitive producers of steel and steel products. These products are generally produced for use by the construction industry in the United States. Both manufacture and sell sectional plate structures fabricated from curved corrugated steel plates which are bolted together to form flexible, tubular and arch-shaped structures. These structures are generally used as underpasses for roads and railroads, tunnels, waterways, and bridge replacements. In this case, Armco claims that Republic violated its patent number 3,508,406 (known as the "Fisher patent") which is a patent for an oversized, long-span corrugated steel arch structure.

It is undisputed that these types of steel arches and structures have been used in the steel and construction industry for many years. Until the late 1960s, the maximum width of these structures did not exceed 25 to 30 feet. Armco claims that the problem addressed by the Fisher patent in suit arose because of the ever-increasing demand for structures with larger cross-sectional dimensions. The design set out in the Fisher patent allows for the use of flexible steel arch structures which span up to 50 feet. A key feature of the Fisher invention is the use of thrust beams or buttress means which are affixed to the exterior surface of the corrugated steel plates at the juncture between the flexible steel wall and the flexible top arch of the structure. These beams extend longitudinally along the surface of the structure and are primarily load-spreading devices that enable the builder to prop-

---

* The Honorable William O. Bertelsman, United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Whitaker & Merrell Company and Watson Podiak & Associates have been held harmless by Republic Steel Corporation. Republic is, therefore, the sole Defendant-Appellant to be addressed in this appeal.

erly backfill and compact the supporting soil at certain critical locations against the surface of the steel structure. These beams also provide lateral support for the structure, stiffen the structure along its length and reinforce the steel plates in the areas most susceptible to buckling. These thrust beams employed in the Fisher patent are concave.

The operation of the special thrust beams and other elements in the design of the patent enabled the structures to be built on a much greater scale than had previously been known. Armco introduced its new design under the trademark "Super-Span". To date, Armco has marketed over 1,400 such structures throughout the world. In 1972, Armco adopted a licensing policy pursuant to which it would license any interested party, including competitors, to erect and install the patented structures, subject to the payment of a royalty of $140 per ton, based upon the number of tons of steel used in each licensed structure. The same royalty rate is used today. A notice was published in the official gazette of the United States Patent Office of June 27, 1972, advising the public that the Fisher patent was available for licensing.

Some time after the introduction of Armco's Super-Span, Republic marketed a competitive structure, called the "Maxi-Span". Republic's Maxi-Span is also a long span arch structure, capable of installation up to 50 feet in width. Republic's structure has buttress means which it calls "compaction wings." These are made from curved steel plates and are attached to the steel structure at approximately the same position that the thrust beams patented by Armco are attached to the Super-Span. When attached, the compaction wings form a triangle jutting from the side of the steel structure with horizontal and vertical concave surfaces. These wings serve approximately the same purpose as do Armco's thrust beams, in approximately the same manner.

There is no doubt that Republic was aware of the Fisher patent within months after it was initially issued, i.e., years before the Maxi-Span was introduced. In 1973, Armco advised Republic that it considered Republic's Maxi-Span design to be an infringement of the Fisher patent, and that Armco would be willing to license Republic under that patent. Between 1974 and 1977, Armco and Republic carried on periodic discussions concerning the granting of a license to Republic for the manufacture of its Maxi-Span structures, all the while Republic continuing to market the Maxi-Span. The parties were unable to agree upon mutually satisfactory terms, and this suit for infringement was instituted in 1978. Republic responded, claiming that the Fisher patent was actually invalid; that even if valid, it had not been infringed by Republic; that even if valid and infringed, Armco was barred by the doctrine of laches and estoppel from bringing suit against Republic; and that even if valid, infringed, and timely, Armco's royalty rate of $140 per ton of steel was unreasonable.

The district court considered all these issues in turn. In a 20-page opinion setting out extensive findings of fact and conclusions of law, the district court determined that the patent was a valid innovation, that Republic's Maxi-Span structure did infringe upon that patent, and that the $140 royalty rate was a reasonable one. This appeal followed.

## II.

■ As Judge Peck noted in a recent decision for this Court, "In patent litigation, separating matters of fact from matters of law for purposes of appellate review is about as easy as unscrambling eggs." *General Motors Corp. v. Toyota Motor Co., Ltd.,* 667 F.2d 504, 505 (6th Cir.1981). There is no doubt that the ultimate question of patent validity is one of law. *See e.g., Graham v. John Deere Company,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966). In addition, the various determinations regarding the elements of validity are legal conclusions. *See General Motors Corp. v. Toyota Motor Co., Ltd., supra.* However, this Court has repeatedly emphasized that the underlying factual determinations which lead to those ultimate

conclusions are to be subject to the clearly erroneous standard of review under Federal Rule of Civil Procedure 52(a). Only where the facts *as found* or the law as applied do not then support the legal conclusion reached by the trial court may this Court overturn the district court determinations based on a finding of mere error. *American Seating Co. v. National Seating Co.,* 586 F.2d 611, 619 (6th Cir.1978), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979).

The standard of review with regard to the determination of infringement and with regard to the reasonableness of the royalty charges is not nearly so complicated. Both are factual determinations, subject to the clearly erroneous standard of review.

Patent Validity

■ There are three legal requisites to a valid patent: *utility, novelty, and nonobviousness. General Motors Corp. v. Toyota Motor Co., Ltd., supra.* The utility of a 50-foot span composite arch structure is uncontested in the present case. Republic alleges, however, that the patent is neither novel nor nonobvious, and is therefore invalid under the relevant provisions of the patent law. 35 U.S.C. §§ 102, 103. The burden is on Republic to establish these assertions by clear and convincing evidence, in the face of a presumption to the contrary which arises from the issuance of the patent. *General Motors Corp. v. Toyota Motor Co., Ltd., supra. See also Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

■ Under 35 U.S.C. § 102, novelty does not exist if the patented device has been anticipated by a prior device. That is, novelty is lacking if all the elements of the patent, or their equivalents are found in a single prior art structure where they do substantially the same work in the same way. *See Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974). The district court considered each of the patents

representing the prior art which Republic claims "anticipated" the design of the Fisher patent within the meaning of § 102. The district court concluded:

> The scope and content of the prior art does not encompass load-spreading thrust beams. We cannot find that all of the elements of the Fisher patent 406 or their equivalent are found in a single prior art patent or prior structure wherein the elements do substantially the same work in substantially the same way. There is a distinct and practical difference between the patent invention of Christopher Fisher, which made it possible for the first time to build large-span, flexible steel structures using heavy equipment in the critical backfilling process, and anything disclosed by the prior art.

■ Upon review of the Radcliffe, Trumbull, Hereford and Kaiser patents,[2] we are convinced that the district court did not err in finding that the design contemplated by the Fisher patent was a novel and useful addition to the state of the art. There appears to be nothing in those patents which would have taught one how to structure or install the kind of wide-span arch structure which, because of the Fisher patent's innovations, is in use today.

■ Under 35 U.S.C. § 103, nonobviousness does not exist where a party of ordinary skill in the art would have known how to develop the patented item. *See Graham v. John Deere Co., supra.* Because of the presumption of validity when relying on the defense of obviousness, the burden is on the party challenging validity to demonstrate exactly what prior art is pertinent and what level of skill is possessed by the ordinary worker in that art. *Saginaw Products Corp. v. Eastern Airlines, Inc.,* 195 U.S.P.Q. 551 (E.D.Mich.1977), *aff'd.* 615 F.2d 1136 (6th Cir.1980). There is simply no evidence present in the transcript or in the exhibits offered by Republic to indicate the level of skill of the ordinary worker in the

---

2. The appellants claim that these patents, either single or when taken as a whole represent the prior art to which the Patent Office and this Court must look. These patents were issued in 1890, 1900, 1913 and 1967, respectively.

art. Accordingly, we can only conclude that the defendants have failed to meet their burden in this regard.

In addition, the district court pointed to two other factors which militate in favor of a finding of nonobviousness. First, the fact that prior to the Fisher invention no one had been able to build a corrugated metal flexible steel conduit of such large dimensions indicates that the patent design must not have been all that obvious to those in the art. *See General Tire and Rubber Co. v. Firestone Tire and Rubber Co.,* 489 F.2d 1105 (6th Cir.1973). Second, a conclusion of nonobviousness is reinforced by the commercial success of the Fisher invention. *See Graham v. John Deere Co., supra.*

Infringement

■ Republic has several basic arguments with regard to its noninfringement claim. First, Republic reiterates its assertion that the Fisher patent is merely an embodiment of prior art. As such, Republic claims that it could not possibly be infringed:

> It is axiomatic that one cannot infringe by following the prior art, since that which infringes if later anticipates if earlier. The Republic structures, therefore, do not infringe the Fisher patent.

Appellant's Brief at p. 30. This argument can be briefly dealt with. In light of the discussion above indicating our belief that the district court was correct in determining that the patent was valid and did not merely embody the prior art, this element of Republic's noninfringement argument must also fail.

Next, Republic claims that there has been no literal infringement of the terms of the patent. In determining whether a patent has been infringed by an accused device, the words of the claim in the patent must be compared with the accused device in order to determine whether there has been literal infringement of those terms. If the accused device is clearly within the claim, infringement exists. *See Acme Highway Products Corporation v. The D.S. Brown Company,* 473 F.2d 849 (6th Cir.1973) (*quoting Graver Manufacturing Co. v. Linde Co.,*

339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). The defendants are charged with the infringement of claims 1, 2, 3 and 14 of the Fisher patents.

As an initial proposition, we note that Republic's catalogue advertising of the Maxi-Span structure is almost identical to the catalogue issued by Armco on the Super-Span. The language and format of the two are parallel. Republic describes the purpose and function of its compaction wings in language almost verbatim from the Armco catalogue describing the use of the thrust beams, and it is clear that Republic was attempting to market a flexible steel structure to compete with Armco. Though Republic's advertising of its own product is not determinative, it does set the stage for the further factfinding made by the district court.

The district court determined that claims 1, 2, and 3 read directly on each of the accused Maxi-Span structures and that claim 14 reads on several, though not all, of those structures. Each Maxi-Span structure is a flexible steel structure with buttress means attached at the juncture of the flexible top arch and the side walls, those buttresses being located at approximately a 40–45 degree angle from the vertical center line of the structure. Republic emphasizes the fact that its compaction wings are constructed of corrugated metal plates and that the Armco thrust beams are constructed of poured concrete. The record indicates, however, that it is the shape of the buttress means, the placement of the same, and the nature of the compaction surrounding those buttresses which allows for the construction of the wide-span conduits. The material of the buttress means appears irrelevant to the purpose behind the Fisher patent. Republic's compaction wings are affixed to the exterior surface of the conduit at the exact point of placement of the Armco buttress means. Those compaction wings have a substantially triangular configuration and an accurately curved inner surface abutting the exterior surface of the structure at the point of attachment, serving the same load-spreading and pressure

control uses as the Armco cement buttress means.

Given the striking similarity between the Fisher patent claims and the design and function of the Republic structures, we are unable to say that the district court's finding of literal infringement is clearly erroneous.

The defendants next argue that because Armco narrowed its own patent claim by amendment in order to secure the allowance of that claim, Armco cannot now assert its claim against an accused structure which performs in the very manner surrendered. *See Exhibit Supply Co. v. Ace Corp.,* 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942). Essentially, what Republic's argument centers on is the fact that Fisher's patent was rejected as unpatentable over prior existing patents as it was initially submitted to the patent office. To overcome this rejection, the Fisher patent was amended. Those amendments specifically provided that the buttress means would have a longitudinal surface abutting the exterior surface of the structure and would have at least one additional load-spreading surface in contact with the backfill material. The addition of these claims was thought to establish a useful innovation over the procedures employed under prior patents and to, therefore, justify patentability. The defendants claim that because claims 1 and 14 were so limited, Armco cannot now assert an infringement claim against Republic's structure which has neither of those elements.

While recognizing the validity of this type of argument, the district court found that Republic's factual assertions regarding its own structures were unsupportable—i.e., that the Maxi-Span *did* match the specific limitations in the patent claims. Again, a review of the entire record reveals that there is substantial support for this conclusion and that the district court did not commit clear error in making such a finding.

Royalty Payments

35 U.S.C. § 284 provides, in pertinent part, as follows:

Upon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court . . . .

The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.

As noted above, the issue of reasonable royalties is a question of fact to be determined, in the first instance, by the district court. Upon appeal from such proceeding, the award to a successful patent holder must be upheld if the record contains substantial evidence to support it and the findings of fact must not be set aside unless clearly erroneous. *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115 (6th Cir.1976).

A reasonable royalty is generally an amount which a person desiring to manufacture and sell a patented article as a business proposition would be willing to pay as a royalty to the patent owner. *See Panduit Corp. v. Stahlin Brothers Fiber Works, Inc.,* 575 F.2d 1152, 1157–58 (6th Cir.1978); *Jenn-Air Corp. v. Penn Ventilator Co., Inc.,* 394 F.Supp. 665 (E.D.Pa.1975). The literal terms of the statute set a "reasonable royalty rate" as the minimum below which an award of damages may not fall. Therefore, where damages or previously affixed royalty rates can be determined through some other calculation, a determination of "reasonable royalty payments" will not be necessary. *See Zysset v. Popeil Brothers, Inc.,* 318 F.2d 701 (7th Cir.1963), *cert. denied,* 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 610 *reh. denied,* 376 U.S. 959, 84 S.Ct. 965, 11 L.Ed.2d 978. Accordingly, a successful patentee in a patent infringement suit is generally entitled to payment of an established royalty rate whenever one does exist. *See Beatty Safway Scaffold Co. v. Up-Right, Inc.,* 306 F.2d 626 (8th Cir.1962), *cert. denied,* 372 U.S. 934, 83 S.Ct. 881, 9 L.Ed.2d 766. The district court determined that, as long as the royalty payment established in the marketplace by Armco was not clearly

unreasonable, that figure should control for purposes of determining the damages owed for infringement.

█ Republic asserts that Armco has not established any royalty payment in the market. Republic claims that save three instances involving the Corps of Engineers, no persons had ever "agreed" to pay $140 per ton or any other amount as a reasonable royalty. Republic contends that as to non-government purchasers, "royalty elements of the purchase price were nonseparable from the total cost of the structure as installed." Essentially, Republic claims that Armco's "established royalty rate" was merely illusory in application. Having asserted that Armco has no established royalty rate, Republic then goes on to determine what, in its view, would be a "reasonable royalty rate." Republic claims that the only evidence in the record upon the issue of what royalty would be reasonable is that a willing licensor and a willing licensee would fix a royalty between one and two percent of the net selling price, i.e., from $7.50 to $15.00 per ton, not $140 per ton. This evidence was supplied by its own expert who testified that, in his view, the innovative nature of the Fisher design was negligible and that therefore licensees would be adverse to paying large amounts for the mere ability to use the process. Our prior determinations regarding the validity and utility of the Armco patent, and a review of the testimony of Republic's expert, lead to the conclusion that these "reasonableness" calculations are unsupportable.

In addition, the district court examined Armco's practices and determined that Armco *had* established a standard royalty which had been in effect since 1972. That court found that approximately 440 licenses had been granted at that rate and further found that the royalty was both reasonable and proper under the circumstances. Given that the royalty rate was published in the patent office, that mention of the royalty and the specific rate was included in most contracts for the use of the design, and that Republic's evidence was insufficient to re-

but the existence of this standard or its reasonableness, we cannot now find that the district court erred in choosing the $140 figure as its measure of damages.

Accordingly, the order of the district court is AFFIRMED in all respects.