**ROLLS–ROYCE LIMITED, 65 Buckingham Gate, London, SWIE 6AT, England, Plaintiff,**

**and**

**Renishaw plc, Gloucester Street, Wotton-under-Edge Gloucestershire, GL 12 7DN, England, Plaintiff,**

**v.**

**GTE VALERON CORPORATION, 750 Stephenson Highway, Troy, Michigan 48007, Defendant.**

**No. 83–CV–1497–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 4, 1985.

---

Parkhurst & Oliff by James A. Oliff, William P. Berridge, Alexandria, Va., Dickinson, Wright, Moon, Van Dusen & Freeman by James A. Samborn, Detroit, Mich., for plaintiff.

Harness, Dickey & Pierce by Don K. Harness, G. Gregory Schivley, Brimingham, Mich., for defendant.

## OPINION

GILMORE, District Judge.

Throughout trial of this case, several patents and prior art references have been discussed and referred to in abbreviated form. This opinion will also refer to the pertinent patents and references in abbrevi-

ated form. The following is a list of the full titles of the patents and references relevant here, together with their abbreviations.

The patents in suit are:

| U.S. Patent No. 4,153,998 to McMurtry | Known as the '998 Patent |
| U.S. Patent No. 4,397,093 to McMurtry | Known as the '093 Patent |
| U.S. Patent No. 4,451,988 to McMurtry | Known as the '988 Patent |
| U.S. Patent No. 4,473,955 to McMurtry | Known as the '955 Patent |

The Defendant's Patent, used at trial to describe the Defendant's Accused Device, is:

| U.S. Patent No. 4,451,987 to Cusack | Known as Cusack '987 |

The Prior Art references are:

| Automatologie, Wolfgang Schmid, 1952 | Known as Automatologie and as Schmid '52 |
| Fuhlergesteuerte Mashinen, Schmid & Olk 1939 | Known as Maschinen and as Schmid '39 |
| German Patentschrift No. 732,165 to Mueller | Known as Mueller and as Mueller '165 |
| U.S. Patent No. 3,541,924 to Gambin | Known as Gambin and as Gambin '924 |
| German Auslegeschrift 24 40 692 to Kochsiek | Known as Kochsiek |
| U.S. Patent No. 3,566,479 to Pascoe, et al. | Known as Pascoe |
| U.S. Patent No. 2,655,630 to Kelk | Known as Kelk |

The other McMurtry patents are:

| U.S. Patent No. 1,447,613 to McMurtry | Known as '613 |
| U.S. Patent No. 4,288,925 to McMurtry | Known as '925 |
| U.S. Patent Application 398831 | Known as '831 |

## I

This action is a patent action in which plaintiff seeks injunction and damages for infringement of specified claims of four of plaintiff's patents. The claims involved are claim 15 of the '998 Patent; Claims 1 & 3 of the '093 Patent; claim 1, 3, 5, 7, & 8 of the '988 Patent; and claim 2 of the '955 Patent. The latter three patents will be known hereafter as the '093 Chain Patents.

All of the patents are issued in the name of inventor David McMurtry, and are jointly owned by plaintiffs. The basic issues before the Court are patent infringement and validity.

The patents in suit are directed to devices known as touch-trigger probe heads. These heads are used for detailed measurements of parts and machine tool quality control.

A touch-trigger probe head having a stylus extending from it is placed on the end of a movable arm, and means are provided for monitoring the location of the stylus. The probe head is moved towards a selected surface (such as a hole or projection) of an object, until contact is made between the stylus and the surface. A signal is then triggered and, from the known location of the probe head, the location of the surface is determined. The probe head is then moved away from the object, moved to a second target surface, and the procedure is repeated until all desireable measurements have been completed. It is essential that the measurements be exceedingly accurate, and those in plaintiff's devices and the infringing device are accurate to within 5 millionth of an inch.

The accused product—or the infringing device—is a touch trigger probe manufactured by defendant GTE Valeron, the Cusack '987 patent.

The '998 Patent and the '093 Chain Patents were granted upon inventions made by McMurtry. Realizing the importance of his patents and inventions, McMurtry left Rolls-Royce to form his own company, now known as plaintiff Renishaw, to capitalize on his inventions. The inventions of the asserted patent claims of McMurtry comprise Omni-directional touch-trigger probe heads that revolutionized the machine tool and coordinate measuring machine industry. With the claimed devices, operations

that previously consumed large amounts of operator time and required very complex and fragile instrumentation can now be performed quickly and automatically with little danger of breakage or errors. The probe heads are relatively easy and inexpensive to manufacture, do not require high precision in their construction, and are difficult to damage.

Plaintiff has had great commercial success with the patents, and Renishaw has developed into a multimillion dollar industry from a basement operation, using a phone booth as the only telephone.

Claim 15 of the '998 Patent defines a touch-trigger probe head having a rest position positively defined by axial kinematic constraints, combined with a directly acting transverse constraint and very precise triggering means based on the seats between the relatively stationary housing and the movable stylus holding member. The probe head provides three-dimensional operation, and is very accurate in a single measurement, and produces highly repeatable results over a large number of measurements.

The claims of the '093 Chain Patents are improvements on the '998 Patent. The probe heads there show improved performance derived from the natural ability of a flat plate to rest securely on a kinematically defined axial rest position, and on the ability of a substantially planar resilient member to locate the plate at the same repeatable lateral position. This mechanical positioning may be used in either a 5-way or 6-way probe head construction.

It is the claim of the plaintiff that defendant has appropriated all of the elements of the asserted claims in both groups of patents in its line of probe head products.

Defendant denies infringement, arguing primarily that the claims at issue are limited in scope and that the defendant's accused device does not practice the true scope of the asserted claims. The burden to prove infringement is on the plaintiff. Proof of infringement must be by a preponderance of the evidence. *Envirotech Corp.*

*v. Al George, Inc.*, 730 F.2d 753 (Fed.Cir. 1984).

Defendant also denies the validity of the patents, arguing that both '998 and the '093 Chain are obvious over prior art, and that the '093 Chain is invalid for violations of 35 U.S.C. § 112, and for double patenting.

35 U.S.C. § 282 provides:

A patent shall be presumed valid. Each claim of a patent (whether in independent or dependent form) shall be presumed valid independently of the validity of other claims; dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

Thus, there is a statutory presumption of validity of the patents in suit. The burden of proof of invalidity is on defendant. Proof of invalidity must be made by clear and convincing evidence. *Jones v. Hardy*, 727 F.2d 1524 (Fed.Cir.1984).

Defendant has also raised the defense that the patents are unenforceable because plaintiffs engaged in inequitable conduct before the Patent Office. The burden to prove this defense by clear and convincing evidence is on the defendant. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553 (Fed.Cir.1984).

Finally, defendant has counterclaimed for unfair competition. The burden of proof on this counterclaim is on the defendant.

## II

First, the Court will consider Claim 15 of the '998 Patent.

Valeron defends against the allegation of infringement by claiming that Claim 15 is limited to convergent surfaces. Since the Valeron probe does not employ convergent surfaces, Valeron argues, it has not infringed Claim 15 of the '998 Patent.

However, Claim 15 is a broad claim *not* limited to convergent surfaces embodi-

ments. This is shown by the following evidence:

1) Claim 15 is readable on Fig. 1–3 (convergent surfaces) *and* on Fig. 4–8 of the '998 Patent.

2) Claim 15 is a parent claim to Claim 16, which reads on Fig. 4–7, which is not a convergent surfaces claim.

3) The file history (Exhibit 83) shows that Claim 43 of the '925 Patent application, which was the predecessor claim to Claim 15, was explicitly brought to the examiner's attention as being directed to Fig. 4–8, the non-convergent surfaces embodiments.

4) Defendant's expert witness Barker testified that Claim 15 is *not* limited to Fig. 1–3.

5) Defendant's expert witness Barker testified that Claim 15 is *not* literally limited to convergent surfaces.

6) Additionally, defendant admitted that Claim 15 was not limited to convergent surfaces in its Answer to Interrogatory 224(e).

Thus, the Court finds that Claim 15 is not limited to convergent surfaces, but rather is a broad claim for a repeatable three-dimensional touch-trigger probe head covering both convergent surfaces and equivalent structures.

Valeron defends by arguing that if Claim 15 is not limited to convergent surfaces, then it is invalid because it is obvious over prior art. In particular, Valeron alleges that Claim 15 is obvious over the following:

1) "Automatologie" (Schmid '52)

2) "Maschinen" (Schmid & Olk) (Schmid 39)

3) Mueller 165

Plaintiff responds that those 3 pieces of prior art are not relevant to Claim 15, and that they are no more relevant than Gambin '924, which was considered by the Examiner.

Under 35 U.S.C. § 103, a patent is invalid if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.

■ The Court must examine:

1) the scope and content of the prior art;

2) the claims at issue, and

3) the level of ordinary skill in the prior art.

Secondary considerations such as commercial success, long-felt but unsolved needs, and commercial acquiescence can also be relevant. *See Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

■ It is important to emphasize, however, that one cannot rely on hindsight in determining whether the invention was obvious. *Multifastener Corp. v. MacLean-Fogg Co.*, 572 F.Supp. 418 (E.D.Mich.1983).

The German prior art argued by defendants did not make Claim 15 of the '998 Patent obvious for the following reasons:

The Court will first consider Automatologie & Maschinen (Schmid 52 & 39).[1]

1) They are tracing devices designed primarily for milling rather than probes designed primarily for coordinate measuring. Although they "sense engagement" with the model to be traced, this is *not* equivalent to sensing and measuring in space the position of a work piece.

2) They are devices of which great accuracy was not expected or required. Exhibit 151, Translation of Automatologie, Schmid 52.

3) Defendant's expert Professor Fisher testified that they could be accurate to a thousandth, or to a fraction of that, but that the accuracy needed for a coordinate measuring machine was 50 millionths.

---

**1.** Both plaintiff's expert Professor Duffie and defendant's expert Professor Fisher have testified there is no important difference between these two references. There is considerable testimony that they are the same device portrayed in slightly different figures. Therefore, they can be discussed together.

4) They taught that switching at the seats was undesirable (due to a problem with sparking). This is directly contrary to the '998 Patent, which in part achieves its great accuracy by switching at the seats. Thus, the reference pointed in an opposite direction than that taken by the patent in suit.

5) They do *not* clearly teach 3 points of mechanical contact to achieve a positively defined rest position. Plaintiff's expert Professor Duffie testified that the reference discloses 6 contact elements, that is, in order for the circuit to begin and end on the housing, he testified that at each of 3 locations on the housing there must be 2 contact elements. These pairs are bridged by contacts on the movable member.

Plaintiff's expert Sears testified that another possible reading of the reference required 4 contact elements for the circuit to begin and end on the housing.

Defendant's expert Professor Fisher admitted that Professor Duffie's interpretation was reasonable, although he believed there were 3 contacts because the text refers to 3 contacts. He finally admitted that nothing in the reference taught the idea of turning pairs of contacts into convergent surfaces.

Thus, the references are, at best, ambiguous as to the number of contacts. They do not teach 3 points of mechanical contact to achieve a rest position.

6) They do not teach transverse constraint of the stylus because there is a gap between the movable member and the housing. While narrowing the gap could obviously improve accuracy, eliminating it would prevent the reference from functioning at all.

Defendant relies heavily on Fig. 8 of the '998 Patent, which shows an embodiment relying in part on the wall of the housing for transverse constraint. However, the testimony of plaintiff's experts Duffie and Sears is that in Fig. 8 there is no gap, but rather a friction fit between the housing and the curved periphery of the movable member that allows the movable member to move.

In fact, defendant's expert Professor Fisher admitted that the circle diagram on Fig. 51 of Automatologie (Schmid '52) indicated the movements of the stylus tip before contact is broken, and therefore did not suggest a precise location of the stylus except within a certain tolerance variation. At his deposition, Professor Fisher testified this fact kept the reference from being a good measuring device.

Thus, it is clear that the Automatologie and Maschinen references (Schmid '52 and Schmid '39) do not teach switching at the seats, a positively defined rest position achieved by 3-point contact, nor transverse constraint of the stylus. Claim 15 of the '998 Patent is not obvious in view of them.

Nor is claim 15 of '998 obvious in view of Mueller '165 because that reference is a tracer with a different and inaccurate switching means, i.e., a mercury switch requiring adjustment of the screws to compensate for the expansion of the mercury. Defendant's expert, Professor Fisher, admitted that a mercury switch is not a "fluidic" switch as described in the '998 Patent.

In addition, the commercial success of the '998 Patent supports the finding of non-obviousness. Renishaw, which started operation with a public telephone, in a few years of existence has developed to the point where today it employs hundreds of people manufacturing and distributing touch-trigger probes around the world. It has sold many millions of dollars worth of the patented inventions, and is the world's largest producer of touch-trigger probe heads, supplying most of the machine tool and coordinate measuring machine industries. Plaintiff's touch-trigger probe heads have had extraordinary commercial success. It is clear that commercial success is a secondary consideration in determining whether the invention was obvious. *See Simmons Fastener Corp. v. Illinois Tool Works, Ind.,* 739 F.2d 1573 (Fed.Cir.1984).

Further, evidence from Mr. Wright & Mr. Deis indicated that the McMurtry

probe fulfilled long-felt but unfulfilled needs in the industry. Finally, industry acquiescence was shown in that DEA obtained a license under the patent, and in that one of defendant's Japanese customers required indemnification from defendant under plaintiff's corresponding Japanese patent.

Thus, the secondary considerations point to non-obviousness.

■ Therefore, it is clear that the '998 Patent is valid.

### III

The Court now turns to the question of infringement. As the court pointed out in *Multifastener Corp. v. MacLean-Fogg Co., supra:*

> There are two methods of determining whether a patent has been infringed. First, a device can "literally" infringe the patent. To determine whether there is literal infringement, the words of the claim in the patents must be compared with the accused devices. Second, if the two products are "equivalent", there is infringement. If the accused device performs substantially the same function in substantially the same way to obtain the same result as the patented device, they are equivalent. *Armco, Inc. v. Republic Steel Corp.,* 707 F.2d 886 (6th Cir.1983); *Acme Highway Products Corp. v. D.S. Brown Co.,* 473 F.2d 849 (6th Cir.1973), *cert. denied* 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57 (1973); *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

*Id.* at 432.

In this case, both plaintiff's experts and defendant's experts have testified that the words of Claim 15 can be literally read on Valeron's accused device.

Professor Duffie testified that Claim 15 of the '998 Patent is readable on Fig. 6 & 7 of the Cusack patent used here to exactly describe Valeron's probe, and defendant's expert Barker testified that Claim 15 reads literally on Valeron's probe.

Thus, defendant has literally infringed Claim 15 of the '998 Patent.

### IV

The Court now turns to the '093 Chain Patents.

■ Defendant argues that the scope of the '093 Chain is limited to 6-way probes, and that, therefore, its 5-way probe does not infringe on the '093 Chain Patents.

However, it is clear that a claim for a 6-way probe inherently includes the capability of a 5-way probe. In addition, Fig. 6 of the '093 claim discloses a 5-way probe since the ball stylus tip shown cannot be used in a 6-way operation. Further, defendant did not attempt to distinguish the Cusack Patent from the McMurtry Patents on this basis.

The status of Valeron's probe as a 4-way probe does not put it beyond the scope of the claims of the '093 Chain.

Valeron further argues that Claims 1 and 3 of the '093 Patent; Claims 1, 3, 5, 7, and 8 of the '988 Patent; and Claim 2 of the '955 Patent, otherwise known as the '093 Chain, were obvious in view of the following prior art: Kelk Patent, Pascoe Patent, and '613 U.K. to McMurtry.

Essentially, defendant argues it would have been obvious to substitute a planar centering member for the spring-loaded ball in U.K. Patent '613 in view of the diagrams shown in Kelk & Pascoe.

Plaintiff denies obviousness, and argues that claims of the '093 Chain were no more obvious over the Kelk & Pascoe prior art than over Kochsiek Patent examined by the examiner.

The claims of the '093 Chain are not obvious over the prior art for the following reasons:

1) The Kochsiek, Kelk, and Pascoe prior art are proportional probes with transducers that do not rely upon a mechanical rest position for accuracy.

2) The diaphrams shown in Kochsiek, Pascoe & Kelk do not suggest that they

can be used to help move a stylus from a rest position or help return it to a rest position.

3) It is evident that the substitution of a planar spring for the spring-loaded ball shown in U.K. '613 Patent (which corresponds to Fig. 7 of the '998 Patent) was not obvious in that defendant itself, in prosecuting the Cusack Patent, cited the '998 Patent as teaching a rest position and cited references teaching planar springs, and yet argued in its patent prosecution that it was not obvious to put these things together. That is to say, defendant's own patent, '987 to Cusack, reinforces the non-obviousness of the '093 Chain.

Valeron also argues the '093 Chain is invalid under 35 U.S.C. § 112 because '093 Claim 1 can only be read onto its embodiment in Fig. 6 if the movable member is assumed to consist of several parts, i.e. 112, 123, 122, 114, and spring 117.

■ However, defendant's expert Barker agreed with plaintiff's experts that it is possible in a patent claim for the word "member" to refer to a group or composite of parts. Defendant has offered no credible reason why such a reading of "movable member" here to include a composite of parts is not reasonable.

Neither is there any basis for defendant's contention that the term "mean sheet plane" renders Claim 1 of the '093 Chain incomprehensible.

Therefore, Section 112 does not render the '093 Chain invalid.

## V

■ Defendant has asserted that the claims in suit of the '093 Chain are invalid for double patenting over Claim 18 of the '925 Patent to McMurtry. This allegation is one of obviousness-type double patenting. Obviousness-type double patenting is a judicially created doctrine, the purpose of which is to prevent the extension of the term of a patent by prohibiting the issuance of claims in a second patent *that are not patentably distinct* from the claims of the first patent.

Both plaintiff and defendant have cited the same legal standard for the valuation of the double patenting defense. *In re Longi*, 759 F.2d 887 (Fed.Cir.1985), cited by defendants, stated:

> The public should ... be able to act on the assumption that upon the *expiration* of the patent it will be free to use not only the invention claimed in the patent but also modifications or variants *which would have been obvious to those of ordinary skill in the art* ... (emphasis added) (quoting *In re Zickendraht*, 319 F.2d 225, 232 (C.C.P.A.1963).)

*Id.* at 892–93.

Similarly, *Carman Industries, Inc. v. Wahl*, 724 F.2d 932 (Fed.Cir.1983) cited by plaintiff says:

> ... [T]he test is whether the subject matter of the claims of the patent sought to be invalidated would have been obvious from the subject matter of the claims of the other patent, and vice versa.

*Id.* at 940.

■ Thus, the test of this defense is whether the claims of the '093 Chain are obvious from the subject matter of Claim 18 of the '925 Patent, and whether Claim 18 of the '925 Patent is obvious from the subject matter of the '093 Chain.

Despite careful review of the record, this Court has been unable to find any evidence leading to the conclusion that the '093 Chain and Claim 18 of the '925 Patent are obvious relative to each other. In fact, defendant has presented no evidence at all regarding the content of Claim 18 of the '925 Patent. Defendant has not compared Claim 18 of the '925 Patent with the claims in suit of the '093 Chain, and there is no evidence on the record from which this Court can conclude that either the '093 Chain was obvious, given the '925 Patent, or that the '925 Patent would have been obvious given the '093 Chain.

■ Defendant hinges its double patenting defense on the allegation that, after the expiration of the '925 Patent, the public will still be unable to produce a 6-way probe with a planar spring (as described in

Claim 18 of the '925 Patent) because such a probe will infringe the claims of the '093 Chain. However, this state of affairs does not necessarily constitute any unlawful extension of a monopoly. As the Court of Customs and Patent Appeals said in *Application of Heinle*, 342 F.2d 1001 (C.C.P.A. 1965):

> The issuance of a patent is no guarantee or even a representation that everything disclosed in it is immediately free of patent or other restraints legally created under the law. Should there be such other patents still in force when a patent expires, the monopoly of the expiring patent is not "extended"; that monopoly ends and any other patents which may affect the rights of the public to use something the expiring patent discloses stand on their own legal foundations. The expiration of a patent right is not a guarantee of a right to use. The right to make, use or vend any given thing may be, and often is, subservient to several patents expiring at different times.

*Id.* at 1005.

Thus, the defense of double patenting must fail.

## VI

█ Turning to the infringement issue, it is clear that Claims 1 & 3 of the '093 Patent; Claims 1, 3, 5, 7, 8 of the '988 Patent, and Claim 2 of the '955 Patent read literally on Valeron's probe, and it should be noted that defendant's expert Barker admitted that the claims of the '093 Chain read literally on Valeron's probe.

Therefore, the accused device infringes the '093 Chain Patents.

## VII

█ Defendant next claims invalidity of the '998 Patent because of anticipation of Claim 15 by prior publications. Anticipation under 35 U.S.C. § 102 requires the disclosure in a single prior art reference of each element of the claim under consideration. *Multifastener Corp. v. MacLean-Fogg Co., Supra.* The Court has already held that the prior art references do not render Claim 15 obvious. For the same reasons, they do not disclose each element of Claim 15, and cannot constitute anticipation under Section 102.

Defendant also claims anticipation by the device made and sold by Lamerson.

35 U.S.C. § 102 provides in pertinent part:

> A person shall be entitled to a patent unless:
>
> a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country before the invention thereof by the applicant for patent, or
>
> b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country more than one year prior to the date of application for patent in the United States, or
>
> . . . . .
>
> g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

The first United Kingdom patent application was made on September 21, 1972, and the grandfather application to the '998 Patent was the '831 Patent, filed September 19, 1973. Therefore, the crucial dates for anticipation under any of the paragraphs of Section 102 set forth above is either September 19, 1972 or September 21, 1972.

█ For a prior patent or other publication to be an anticipation it must bear within its four corners adequate directions for the practice of the patent invalidated. *See Dewey and Almy Chemical Co. v. Mimex Co.*, 124 F.2d 986 (2d Cir.1942). To anticipate a patent, a device must be identical to the patent in question, and must have

been reduced to practice in this case before September 19 or September 21, 1972. The burden of proof of establishing anticipation rests upon the defendant. The defendant concedes that its burden is that of proving anticipation by clear and convincing evidence.

In *Lockheed Aircraft Corp. v. United States*, 553 F.2d 69, 213 Ct.Cl. 395 (1977), the Court of Claims said:

Just as an inventor ... faces a heavy burden in proving his conception and diligence, it is generally recognized that prior invention, use or knowledge, imposes on the party asserting it the requirement of clear and satisfactory proof beyond a reasonable doubt. (citations omitted.)

Indeed, the oral testimony of witnesses, speaking only from memory in regard to past transaction has, in the absence of contemporaneous documentary or physical evidence, consistently been found to be of little probative value. (citations omitted) Such uncorroborated testimony is insufficient to show anticipation, within the meaning of 35 U.S.C. 102, of an issued patent.

*Id.* at 75.

The first question is whether the Lamerson device totally anticipates the Claim 15 of the '998 Patent. It is argued that, because a coil spring is not used in the Lamerson device as depicted in defendant's Exhibits 459 A & B, it does not. It is clear, however, from the testimony that a coil spring could be used in the Lamerson device as depicted in Exhibits 459 A & B, and it is generally conceded that, were one used, it would anticipate the Claim 15 of the '998 Patent.

However, a substantial question exists as to whether the Lamerson device claimed to have been made and sold in the early 1970's actually had the internal construction depicted in Exhibits 459 A & B. Mr. Lamerson and Mr. Alaska testified that the device was so constructed. Mr. Gaynor, a former employee of Lamerson from May 1972 to June 1974, testified that he never saw a probe or probe drawing at Lamerson

with a construction similar to that shown in Exhibits 459 A & B. Mr. Deis testified that, in his position at Bendix, he had the opportunity to see the Lamerson probe, shown to him by Mr. Alaska, and that the probe did not have the construction shown in Exhibits 459 A & B, nor did it have any form of convergent surfaces construction. There is no contemporaneous documentation of the internal construction of the Lamerson probe. Given this state of the evidence, defendant has not carried its burden to provide clear and convincing evidence that the construction of the Lamerson probe anticipated McMurtry's invention.

The evidence as to whether the Lamerson device was reduced to practice before September 19 or September 21, 1972 is equally ambiguous, to say the least.

Mr. Lamerson's testimony on the factual issues of when it was reduced to practice is clearly insufficient to show by clear and convincing evidence that any relevant devices were actually made or actually reduced to practice prior to these dates.

In addition, Mr. Lamerson testified that the device for the Ford Design Center was never delivered. As far as the device for Ford Livonia, the requested quote from Ford Livonia, signed by Mr. Lamerson on May 8, 1972, casts serious doubt on the proposition that the probe for Ford Livonia was reduced to practice in any relevant statutory period. This request (Exhibit 163) recites a *best delivery date* of October 15, 1972 for the *design and building* of the probe at issue.

■ Mr. Lamerson's testimony is that he made a quote to Ford Motor Company at Livonia on September 8, 1971, and that he made a quote to the Ford Design Center on September 1, 1971, but his testimony of this alone is clearly insufficient to establish by clear and convincing evidence that the invention was reduced to practice. There were no drawings of the exact device, and the law requires that there be some contemporaneous documentary or physical evi-

dence to establish the reduction to practice within the required time period.

Therefore, it is clear that the patent is not invalid because of anticipation.

## VIII

Defendant next contends that plaintiff's inequitable conduct renders all of the patents in suit unenforceable. Defendants claim that plaintiffs were aware of Automotology for more than a year before they cited it to the Patent and Trademark Office, and that, when they cited it, they failed to follow the procedures of the Manual of Patent Examining Procedure to make sure the examiner considered Automotology. They claim that, other than Lamerson's omni probe, the Automotology and Maschinen references are the most material prior art to the asserted claim in the '998 Patent. They also cite the long delay and improper citation of Automotology. They claim all of this is a clear indication of wrongful intent and inequitable conduct that should deny plaintiffs a patent. They claim that subjective good faith of a patent applicant or his attorney is not a defense to a charge of inequitable conduct, citing *Argus Chemical v. Fiber Glass-Evercoat*, 759 F.2d 10 (Fed.Cir.1985). They claim that, because of all of this, the patent should not be held valid because of inequitable conduct.

 To find inequitable conduct premised upon alleged non-disclosure or misrepresentation of information to the Patent and Trademark Office requires at least clear and convincing proof of a threshold degree of materiality and intent. *See J.P. Stevens & Co., Inc. v. Lex Tex Ltd.*, 747 F.2d 1553 (Fed.Cir.1984).

 It is clear that even a material misrepresentation or omission is not sufficient to satisfy the intent element required to establish inequitable conduct. *See Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529 (Fed.Cir.1984). To establish inequitable conduct, there must be more than simple negligence, but some intent to mislead the Patent Office. *See Reactive Metals & Al-*

*loys Corp. v. ESM, Inc.*, 769 F.2d 1578 (Fed.Cir.1985).

Here, the fact is that plaintiffs disclosed Schmid '52 to the Patent and Trademark Office, and such an act is clearly not one of a party intentionally trying to conceal an obscure German publication from scrutiny. It is the act of a party making a good-faith effort to comply with its duties under the law.

 Further, under Patent Office Rule 56, the duty on the patent applicant is to cite material prior art to the Patent Office. Patent Office Rule 56 says that information is material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. There is no duty to transmit to the patent office information that is not material to the examination of the application. Both Schmid '52 and Schmid '39 were merely cumulative prior art. They both disclose substantially the same device and share the same shortcomings with respect to Claim 15. They have the same relative lack of materiality with respect to the claimed invention. There was no need that both be cited, and the citation of Schmid '52 is clearly more than sufficient to satisfy plaintiffs' duty of disclosure. Furthermore, Schmid '52 and Schmid '39 are, at best, cumulative to Gambin, which was considered by the patent examiner during the prosecution of Claim 15 of the '998 Patent.

It is clear to the Court that, not only was plaintiff not fraudulent or grossly negligent, but it made every effort to comply with the duty of disclosure to the Patent and Trademark Offices. There is no clear basis for declaring the patents invalid because of inequitable conduct by the plaintiff.

## IX

Defendant has filed a counterclaim against plaintiffs for unfair competition because plaintiffs started, and have contin-

ued, this litigation when they knew or should have known, according to the defendant, that at least Claim 15 of the '998 Patent was invalid and/or not infringed by defendant. They say, in addition, that this conduct, coupled with Renishaw's efforts to hire two key employees of defendant in the probe, constitutes unfair competition by plaintiffs entitling defendant to an accounting of any damages it has sustained. Defendant also claims that Renishaw's entire course of conduct in attempting to eliminate Valeron as its sole competitor in the United States amounts to actionable unfair competition.

The Court finds no basis whatever for such contentions, and the claims are without basis in fact or law.

■■■■ The alleged bad-faith assertion of patents has already been dealt with. The patents the Court has already held are valid and enforceable. The Court has already discussed the Schmid Patents, and finds no basis there for inequitable conduct. With reference to the alleged attempts to hire away defendant's employees, it is clear that no employment offer was ever made or accepted. Even if one had been made, and one accepts as totally true James Robinson's testimony, there still is no basis for claiming such unfair competition as to render the patents invalid. There is no basis whatever for defendant's counterclaim, and no basis for claiming unfair competition because of it.

The counterclaim will be dismissed.

X

The next question the Court must consider is whether treble damages should be awarded, and whether attorney fees should be awarded to plaintiff. 35 U.S.C. § 284 provides that the Court may increase damages up to three times the amount found and assessed, and 35 U.S.C. § 285 provides:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

■■■■ The Court will consider first the question of treble damages. The right to enhance damages is one that is directed to the sound discretion of the Court. Generally where the infringement was not willful and wanton, or knowingly and deliberately done, courts will not enhance damages.

A review of the cases shows that enhanced damages have not been allowed where a defense of invalidity was presented at trial with such force that the court decided infringement and validity only after careful study, or where there was an arguable basis for invalidity, and the court decided validity after careful consideration.

The Court finds that the record here does not support a determination that the defendants acted willfully and wantonly, or that they deliberately and intentionally infringed without investigating the validity and scope of the patent infringed. The defendant's evidence shows that they did not intentionally copy plaintiff's patent, but that they tried to design around it, and although their device clearly infringes plaintiff's patents, the record here would not sustain a finding that such infringement was willful, wanton, deliberate and knowing. Therefore, damages will not be enhanced in this case.

■■■■ The next question is whether attorney fees should be awarded under 35 U.S.C. § 285. It has generally been held that exceptional circumstances under Section 285 incorporate concepts of fraud, malice, and bad faith. The party seeking attorney fees has a significant burden of proving facts establishing the exceptional character of the case by clear and convincing evidence. This clear and convincing evidence must go to either inequitable conduct during the prosecution of the patent or misconduct during litigation. It is only when such proof has been made that the district court may exercise its discretion to make an award of fees. *See Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578 (Fed.Cir.1985.)

In *Deyerle v. Wright Manufacturing Co.*, 496 F.2d 45 (6th Cir.1974) the Court said this:

> Section 285 of Title 35 permits an award of attorneys' fees in patent cases when the circumstances are exceptional. In *Hoge Warren Zimmermann Co. v. Nourse & Co.*, 293 F.2d 779, 784 (6th Cir.1961), we noted that "exceptional circumstances have been interpreted as incorporating concepts of fraud, malice, bad faith and other similar concepts." In *Uniflow Manufacturing v. King-Seeley Thermos Co.*, 428 F.2d 335, 341 (6th Cir.), *cert denied* 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970), we indicated that an award of attorney fees will be upheld if the trial court specifically finds conduct that is unfair, in bad faith, inequitable or unconscionable....

*Id.* at 54–55.

*See also Stewart-Warner Corp. v. City of Pontiac, Mich.*, 717 F.2d 269 (6th Cir. 1983), at page 279.

Here, the Court cannot find that the actions of defense counsel added up to bad faith, fraud, malice, or other similar concepts. The proofs in this matter just do not establish that defense counsel acted in such a way. Therefore it is clear that attorney fees may not be awarded.

For the reasons stated, a judgment may be presented finding the '098 Patent to be valid, and finding the '093 Chain Patents to be valid. The judgment may also find that the Valeron defendant's probe infringes Claim 15 of the '998 Patent, Claims 1 and 3 of the '093 Patent, Claims 1, 3, 5, 7, and 8 of the '988 Patent, and Claim 2 of the '955 Patent.

The judgment shall also contain an injunction against further infringement, and a reference to this Court's Magistrate to sit as a Special Master for an accounting of sums owed for infringement by defendant. Plaintiff shall present such a judgment.

This opinion shall constitute findings of fact and conclusions of law required by FRCP 52(a).