**ROLLS–ROYCE LIMITED and Renishaw, plc, Appellees,**

v.

**GTE VALERON CORPORATION, Appellant.**

**Appeal No. 86–761.\***

United States Court of Appeals, Federal Circuit.

Sept. 8, 1986.

---

\* On January 31, 1986, this court ordered consolidation of Rolls-Royce's cross-appeal, No. 86– 818, with No. 86–761.

James A. Oliff of Parkhurst & Oliff, Alexandria, Va., argued for appellees. Of counsel were William P. Berridge & Law-

rence J. Gotts of Parkhurst & Oliff, Alexandria, Va.

David Francescani, of Darby & Darby, New York City, argued for appellant. With him on brief was Beverly B. Goodwin, of Darby & Darby, New York City. Of counsel were Don K. Harness and G. Gregory Schivley, of Harness, Dickey & Pierce, Birmingham, Mich.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and RE, Chief Judge.[**]

MARKEY, Chief Judge.

GTE Valeron Corporation (GTE) appeals from a December 6, 1985 judgment of the United States District Court for the Eastern District of Michigan: (1) that it had not established invalidity or unenforceability of four patents [1] jointly owned by Rolls-Royce Limited and Renishaw plc (collectively, Rolls-Royce), (2) that it had infringed claims of those patents,[2] and (3) permanently enjoining it from direct or contributory infringement.

Rolls-Royce cross-appeals from that portion of the judgment refusing to find willful infringement and denying it increased damages and attorney fees.

We affirm the judgment in all respects.

*Background*

A thorough description of the inventions claimed in Rolls-Royce's four patents may be found in the district court's opinion. 625 F.Supp. 343, 228 USPQ 489 (E.D.Mich. 1985). Familiarity with that opinion will be presumed.

The patents in suit are directed to what the parties describe as "touch-trigger probe heads," i.e., devices used in measuring apparatus for determining at what point in space contact is established between a stylus carried by the probe head and an object. When the stylus contacts the object, a signal is triggered and, from the known location of the probe head, the location of the surface may be determined. The probe head is then moved to another target surface and the procedure is repeated until all necessary measurements are obtained. As stated by the district court, it is essential that such measurements be exceedingly accurate, and those obtained with Rolls-Royce's probe-head are accurate to within 5 millionths of an inch.

GTE's accused touch-trigger probe embodies subject matter claimed in GTE's U.S. Patent No. 4,451,987 (Cusack '987), issued June 5, 1984.

*Issues Presented*

(1) Whether the district court erred in holding that GTE had not proven facts requiring a conclusion that Claim 15 of the '998 patent is invalid.[3]

(2) Whether the district court erred in holding that GTE had not shown unenforceability of the patents in suit.

(3) Whether the district court clearly erred in finding infringement of the asserted claims of the '093 chain patents.

(4) Whether the district court clearly erred in refusing to find GTE's infringement willful.

(5) Whether the district court abused its discretion in refusing to award attorney fees to Rolls-Royce.

OPINION

A. *The Parties' Burdens on Appeal*

To carry its burden on appeal, GTE must show that the district court's ultimate fact

---

[**] The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

[1] U.S. Patent No. 4,153,998 (issued May 15, 1979) ('998 patent); and U.S. Patents Nos. 4,397,093 (issued August 9, 1983), 4,451,988 (issued June 5, 1984), and 4,473,955 (issued October 2, 1984) ('093, '988, and '955 patents; collectively referred to as the '093 chain patents).

[2] Specifically: claim 15 of the '998 patent; claims 1 and 3 of the '093 patent; claims 1, 3, 5, 7, and 8 of the '988 patent; and claim 2 of the '955 patent.

[3] GTE does not on appeal contest validity of the asserted claims of the '093 chain patents or infringement of claim 15 of the '998 patent.

findings in respect of anticipation and infringement were clearly erroneous, or that the district court's legal conclusions in respect of non-obviousness and unenforceability were erroneous, or that the fact findings underlying the ultimate findings or conclusions were clearly erroneous. *See Atlas Powder Co. v. E.I. Du Pont de Nemours & Co.*, 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir.1984).

To carry its burden as cross-appellant, Rolls-Royce must show that the district court's fact findings on willful infringement were clearly erroneous, and that it abused its discretion in refusing to award attorney fees.

The "clearly erroneous" standard is satisfied "when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

### B. *Validity of the '998 patent*

On appeal, GTE asserts invalidity of asserted claim 15 of the '998 patent for anticipation (35 U.S.C. § 102) and obviousness (35 U.S.C. § 103) in view of two references: (1) W. Schmidt, *Automatologie* (1952), (*Automatologie*) and (2) W. Schmidt & F. Olk, *Fuhlergesteuerte Maschinen* (1939) (*Maschinen*).

Claim 15 reads:

15. A device for mounting a stylus in position-determining apparatus wherein said device and an object are movable relative to each other for engaging the stylus with the object and by such engagement sense the position thereof, said device comprising:

a fixed member having an axis,

a movable member to which a stylus is connectable,

first electric contact elements connected to said fixed member at three locations spaced around said axis,

second electric contact elements connected to said movable member in positions confronting said first elements in the direction of said axis,

bias means for urging said movable member into engagement with said fixed member at all said first and second electric contact elements thereby positively defining a rest position for said movable member,

means acting directly on said movable member for constraining said movable member against movement in a direction transverse to said axis when said movable member is in said rest position, said movable member being removable from said rest position in opposition to said bias means by a force applied to said movable member thereby to break engagement between said elements at at least one of said locations, said bias means and said constraining means cooperating to return said movable member to said rest position on cessation of said force, and an electric circuit connected to said contact elements to change state responsive to engagement between said elements at at least one of said locations being broken.

The district court found the following differences between the invention of claim 15 of the '998 patent and the disclosures of the *Automatologie* and *Maschinen* references (prior art) relied on by GTE: (1) though able to "sense engagement," the devices of the prior art did not sense and measure the position of an object in space; they were designed for milling rather than for coordinate measuring; (2) the prior art neither expected nor required great accuracy (being accurate to no more than a thousandth of an inch); (3) the prior art taught that electrical switching at the seats[4] was undesirable because of sparking (directly

4. The '998 specification teaches that measurements may be derived from an "input pulse" generated when a rod-like member is deflected,

or "seated," at the electrical contact elements to break a circuit. The parties refer to this as "switching at the seats."

contrary to the teachings of the '998 patent); (4) the prior art did not teach 3 points of mechanical contact to achieve a positively defined rest position; and (5) the prior art did not teach transverse constraint of a stylus. 625 F.Supp. at 348–49, 228 USPQ at 491–92.

The district court also pointed to "extraordinary commercial success" of the invention of the '998 patent, said the invention "filled long-felt but unfulfilled needs," and further pointed to "industry acquiescence" in Rolls-Royce's patent right.

### (1) Anticipation

The district court found that neither the *Maschinen* nor the *Automatologie* reference anticipated claim 15 because neither "disclose[d] each element" of the claim. 625 F.Supp. at 352, 228 USPQ at 494.

■ Urging reversal as a matter of law, GTE says the district court applied an improper test for anticipation. The contention is meritless. The district court correctly defined the test for anticipation as "disclosure in a single prior art reference of each element of the claim under consideration," *id.*, and then correctly applied that test. Nor does the record offer a scintilla of support for GTE's assertion that the district court improperly "looked beyond a single reference" in considering the anticipation issue.

GTE next contends that: (i) Claim 15 is not limited to "three-point" contact; (ii) *Maschinen* discloses three point contact; (iii) *Maschinen* discloses switching at the seats; and (iv) *Maschinen* discloses a lateral constraining means.

#### (i) Three point contact

■ GTE presents a convoluted argument focused on specific elements in claim 15, ignoring the rule that the *elements* are not claimed, the *combination* is. The district court twice found that the prior art references did not disclose "3 points of mechanical contact *to achieve a positively defined rest position.*" 625 F.Supp. at 349, 228 USPQ at 492 (emphasis added). It noted that GTE's expert Fisher admitted

that Rolls-Royce's expert Duffie's interpretation was reasonable, and that nothing in the references disclosed turning pairs of surfaces into convergent surfaces.

GTE has not persuaded us that the district court clearly erred. Before the district court, GTE unsuccessfully argued that claim 15 was limited to "convergent surfaces." *See* 625 F.Supp. at 348, 228 USPQ at 491. Before this court, GTE argues that claim 15 is directed to "nonconvergent surfaces". Whatever may be said of GTE's volte-face, its assertion that claim 15 must include at least two points of mechanical contact at each of the three locations is unsupported by any reference to undisputed testimony of record.

#### ii. Disclosure of three point contact

GTE contends that even if claim 15 were limited to one point of contact at three locations, it would nonetheless read directly on the *Maschinen* reference, pointing to testimony of its experts Barker and Fisher, which it says was not disputed. GTE ignores the district court's contrary finding that Maschinen did not disclose three point contact "to achieve a positively defined rest position." GTE also ignores the testimony of Rolls-Royce's experts about the "positively defined rest position". No clear error has been shown.

#### iii. Switching at the seats

GTE says the district court clearly erred in finding, for purposes of anticipation, that *Maschinen* did not teach switching at the seats. No reference to switching at the seats as such is made in the district court's opinion on anticipation. GTE imports the reference from the court's findings in relation to obviousness, in light of the court's statement about the "same reasons". The argument is unavailing, *Maschinen* having clearly failed to disclose each element in Claim 15.

#### iv. Lateral Constraint

■ GTE repeats testimony of its expert Fisher that "Maschinen clearly discloses a lateral constraining means in the close fit

of the stylus against the housing." Rolls-Royce points to expert testimony supporting the district court's finding that the prior art references "do not teach transverse constraint of the stylus because there is a gap between the movable member and the housing," 625 F.Supp. at 349, 228 USPQ at 492.

GTE's arguments on this point, as on so many others in this appeal, reflect a misperception of the appellate process and the role of this court. "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *see also Polaroid Corp. v. Eastman Kodak Co.,* 789 F.2d 1556, 1558, 229 USPQ 561, 563 (Fed.Cir.1986).

■ Nothing whatever of record indicates that the district court's finding was in any manner impermissible. Moreover, if an appellant could establish clear error in a district court's findings, i.e., in the court's view of apparently conflicting evidence, by merely citing a contrary view advocated at trial by appellant's expert, the fact finding role of the district court would be rendered meaningless. *See Polaroid, supra,* 789 F.2d at 1573, 229 USPQ at 574.

#### 2. *Obviousness*

■ The district court correctly framed and conducted the obviousness inquiry in light of *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966). As above indicated, the court set forth five findings in respect of the differences between the prior art and the invention of claim 15, and found "extraordinary commercial success" of that invention, long-felt but unfilled needs in the

industry, and industry acquiescence. 625 F.Supp. at 349–50, 228 USPQ at 492.[5] GTE's arguments on appeal in respect of obviousness are without merit. Relying on a publication ("Principles of Design") not set forth in its § 282 notice and not raised until after trial, GTE asserts that the "concept" of kinematic design and its implementation was old. In constructing the argument on obviousness here, GTE assumes the existence of findings never made by the district court and blithely ignores the findings it did make. The district court's findings were not clearly erroneous and those findings support its conclusion on obviousness. No useful purpose would be served, therefore, in further discussion of GTE's arguments on obviousness.

Because GTE fails utterly to sustain its burden on appeal, we affirm the district court's determination that GTE failed to prove facts requiring a holding that claim 15 is invalid.

### III. *Enforceability of the '998 patent*

GTE contends that Rolls-Royce improperly failed to cite *Maschinen* to the Examiner, and improperly delayed citing *Automatologie.*[6] The district court found that *Automatologie* and *Maschinen:* (1) were merely cumulative with prior art cited by Rolls-Royce and considered by the examiner (U.S. Patent No. 3,541,924 to Gambin); (2) disclose substantially the same device; and (3) have the same relative lack of materiality with respect to the invention set forth in claim 15. 625 F.Supp. at 354, 228 USPQ at 496.

#### 1. *Materiality*

■ No clear error has been shown in the district court's findings that *Maschinen* and *Automatologie* shared the same "lack of materiality" and were merely cu-

---

**5.** GTE attacks only the commercial success finding in its main brief. In so doing, GTE continues to ignore the claimed invention and the coverage by claim 15 of all embodiments disclosed in the '998 patent, arguing that only a few of Rolls-Royce's sales were of one embodiment and most sales were of another embodiment. GTE stipulated the commercial success of the accused probe.

**6.** The parties devote substantial space to the timing of the citation of *Automatologie.* In view of our agreement with the district court's determination that the reference was merely cumulative, and thus not material, we need not and do not discuss the parties' contentions on timing of the citation.

mulative with the art before the Examiner. *Id.*

GTE's assertion that *Maschinen* is more material than *Automatologie* is implausible in view of its anticipation assertions that claim 15 "literally reads on" both references. If that were true, it would be difficult to argue any substantial difference in materiality. GTE's argument that *Maschinen* discloses some structural differences from *Automatologie* does not establish that those differences render it more material in relation to claim 15, nor do those differences change *Maschinen's* cumulative relationship with the considered art.

### 2. *Intent*

█ The district court heard testimony that Rolls-Royce had an honest belief that neither *Maschinen* nor *Automatologie* was material. Rolls-Royce's assertion of subjective "good faith" would not alone suffice if "an actor in applicant's position would have reasonably known that the reference was material," *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1564, 223 USPQ 1089, 1096 (Fed.Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985), *see also Argus Chemical Corp. v. Fibre Glass-Evercoat Co.*, 759 F.2d 10, 14, 225 USPQ 1100, 1103 (Fed.Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 231, 88 L.Ed.2d 230 (1986). Nothing in law or logic, however, requires an applicant to submit non-material, merely cumulative references for PTO review, and nothing of record would support a finding in this case that Rolls-Royce should "have reasonably known the reference[s] [were] material" in the context of the disclosure requirement.

GTE's intent arguments on appeal rely on inferences rejected by the district court, and ignore testimony credited by the district court in arriving at its determination.

The district court properly considered the balanced concepts of materiality and intent enroute to its conclusion that Rolls-Royce's conduct was not inequitable. Having been

shown nothing in the record that compels reversal, we affirm that part of the district court's judgment relating to unenforceability.

### IV. *Infringement of the Claims of the '093 Chain Patents*

GTE concedes literal infringement, i.e., that the asserted claims of the '093 chain patent "read on" its accused Cusack device. GTE contends, however, that the claims must be read as limited to "a 6-way probe", and, because the Cusack device is a "five-way probe", there can be no infringement. GTE simply disregards the readability of the claims on both types of probes.

In responding to GTE's argument, the district court said "a claim for a 6-way probe inherently includes the capability of a 5-way probe." 625 F.Supp. at 350, 228 USPQ at 493. The court went on, however, to find that Figure 6 of the '093 chain patents discloses a 5-way probe "because the ball stylus tip shown cannot be used in a 6-way operation." *Id.* Though its "inherently" phrasing may have been infelicitous, it is clear on the entire record that the district court interpreted the claims as covering both five and six-way probes. GTE has not on appeal shown that interpretation to have been erroneous as a matter of law.

Seizing on the district court's single phrase, GTE says "a claim that is *in fact* limited to [a] six-way probe does not 'inherently' cover a five-way only probe." (Emphasis GTE's). That correct statement of legal principle is, however, inapplicable here, where the claims are not "limited in fact" to six-way probes.[7] GTE bases its appeal from this portion of the judgment on (a) the reverse doctrine of equivalents; (b) what it calls "the authority" of *Foster Wheeler Corp. v. Babcock & Wilcox Co.*, 512 F.Supp. 792, 210 USPQ 232 (S.D.N.Y. 1981); and (c) principles of proper claim construction.

---

**7.** When the application that matured into the patent on its Cusack probe was rejected under § 102(b) on the '093 chain patents, GTE did *not*

argue that its probe distinguished because it was a five-way probe.

(a) *The Reverse Doctrine of Equivalents*

■ The district court's decision does not mention the reverse doctrine of equivalents. Rolls-Royce says GTE *"never* mentioned the doctrine in the '093 chain pleadings or testimony, and presented no evidence on the factual issue of equivalency (or lack thereof)." (Emphasis Rolls-Royce's). GTE's response, that it raised the reverse doctrine of equivalents in its opposition to Rolls-Royce's motion for summary judgment, and in its pretrial and post-trial briefs, is unavailing. Judgments rendered after trial are based on what transpired at trial. Oppositions to motions and briefs are not themselves evidence at trial, and GTE's effort to rely on those papers here is inappropriate. An appeal is not a means for counsel to cure mistakes and omissions made at trial.[8] In sum, GTE never contended before the district court that its accused Cusack device "has been so far changed in principle that it performs the same or similar function in a substantially different way." *SRI International v. Matsushita Electric Corp. of America,* 775 F.2d 1107, 1124, 227 USPQ 577, 587 (Fed.Cir.1985) (in banc). It cannot be heard to make that argument here, and its attack on the district court for not discussing what was never presented at trial is not only bold and reckless, as Rolls-Royce points out, it is improper. *See Bayer Aktiengesellschaft v. Duphar International Research B.V.,* 738 F.2d 1237, 1243–44, 222 USPQ 649, 654 (Fed.Cir.1984).

There being no evidence adduced at trial in support of a requested finding that the accused device was so changed in principle that it performs in a substantially different way, GTE's argument based on the reverse doctrine of equivalents is rejected.

(b) *"Authority" of* Foster Wheeler

In relying on *Foster Wheeler,* GTE argues that the narrow disclosure of the '093 chain patent's specification does not support the broad claims asserted and that its

probe does not infringe the claims as properly limited. Citing no claim language that must be limited by the specification, GTE says the specification limits what *it* views as "the very invention itself."

In *Foster Wheeler,* the specification of the patent in suit expressly identified *the allegedly infringing device* and stated that its operation presented problems that were solved by the invention claimed in the patent. No such scenario is present here. Moreover, nothing of record supports GTE's present assertions relating to the provisions of 35 U.S.C. § 112.

(c) *Claim Construction*

■ GTE argues that the specification compels a construction of the claims of the '093 chain patents that would exclude its five-way only probe heads, citing from the specification a reference to a "known" probe which did not permit stylus displacement in a direction opposite that faced by the seat and a statement that "an object of this invention is to overcome this difficulty."

GTE's arguments are unavailing. As Rolls-Royce notes, nothing in the '093 specification or claims exclusively directs the invention to a six-way probe head embodiment. Reference to an object does not constitute in itself a limitation in the claims. In all events, nothing of record renders erroneous the district court's determination that the '093 probe head operates as, and the claims cover, both a five-way and a six-way embodiment. 625 F.Supp. at 347, 228 USPQ at 490. Moreover, though the probe head of Figure 6 may be capable of sensing engagement in both directions along the z-axis, GTE has not shown clearly erroneous the district court's finding, based on the evidence before it, that the ball-tipped stylus of Figure 6 (being rounded) cannot be pulled downward, i.e., does not sense engagement in the negative direction, and thus functions only as a five-way probe head.

---

**8.** GTE's statement in those papers (that it had not appropriated "any technological advancement" or "the essence of any invention") is

similar to its argument on appeal that it did not "appropriate the real invention or contribution" of the '093 chain patents.

The district court's finding of infringement has not been shown to have been clearly erroneous. Accordingly, we affirm that portion of the judgment based on GTE's infringement of the asserted claims of the '093 chain patents.

### V. *Willful Infringement*

The district court found that GTE did not willfully infringe, stating, in reference to the '998 patent, that "[GTE] did not intentionally copy plaintiff's patent [sic, invention], but ... tried to design around [the patent claims]." 625 F.Supp. at 355, 228 USPQ at 497. Rolls-Royce's expert Sears twice said precisely that at trial.

Rolls-Royce asks this court to accept as fact its characterization of the record as showing that GTE "with full knowledge of '998, and after unsuccessful design around attempts, ... surrendered to market pressures and commercialized its infringing products." It urges this court to reverse as clearly erroneous the district court's refusal to find willful infringement based on that characterization and in light of what it calls "the undisputed facts of record." Upon review of the district court's finding in light of the record, we do not conclude that the court clearly erred.

It is undisputed that GTE did not obtain advice of counsel on whether the accused Cusack reed probe infringed. However, the district court heard Murray's testimony on cross-examination that "[GTE] was very conscious of the need not to infringe any patents with its probe head," and that GTE believed "with respect to Cusack's reed probe that there wouldn't be any patent problem because [the probe] was different." On redirect, Murray further testified about Cusack's "heightened sensitivity to the [Rolls-Royce] patents." GTE engineer Miller stated that, following the invention of the Cusack reed probe, he and Cusack discussed whether it avoided infringement of Rolls-Royce's patents because that was "absolutely what we had to do," but that he was not aware of any opinion of counsel to that effect.

Rolls-Royce's reliance on *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 227 USPQ 497 (Fed.Cir.1985), as requiring reversal here, is misplaced. In that case, the district court *found* that defendant, after being warned of infringement by the patentee, made no infringement or validity inquiries and intentionally "disregard[ed]" the warning. The finding of non-willfulness in *CPG* was in direct conflict with that finding of intentional disregard, and thus with the infringer's affirmative duty "to exercise due care to determine whether or not he is infringing," *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389–90, 219 USPQ 569, 576 (Fed.Cir.1983). Because a contrary ultimate finding of willfulness was compelled by the court's unchallengeable underlying findings, we reversed. *See Kloster Speedsteel, AB v. Crucible Inc.*, 793 F.2d 1565, 1579–80, 230 USPQ 81, 88–89 (Fed.Cir.1986). *CPG* is simply inapplicable here, where the district court's underlying finding, supported by Rolls-Royce's own expert Sears, was that GTE made bona-fide efforts to avoid infringement by attempting to "design around" the claimed invention.

It is by now well settled that where a potential infringer has actual notice of another's patent rights he has an affirmative duty of due care. *Underwater Devices, supra; CPG, supra.* That affirmative duty will normally entail the obtaining of competent legal advice of counsel before infringing or continuing to infringe; that does not mean, however, that absence of an opinion of counsel alone *requires* in every case a finding of willful infringement. As this court stated in *Kloster Speedsteel AB*, 793 F.2d at 1579, 230 USPQ at 90–91: "Though it is an important consideration, not every failure to seek an opinion of competent counsel will mandate an ultimate finding of willfulness." *See King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867, 226 USPQ 402, 412 (Fed.Cir.1985) (court "should always look at the totality of the circumstances"), *cert. denied*, —— U.S. ——, 106 S.Ct. 1197, 86 L.Ed.2d 312 (1986); *see also Central Soya Co., Inc. v. George*

*A. Hormel & Co.*, 723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983).

In respect of willfulness, there cannot be hard and fast *per se* rules. The district court, considering the evidence before it and the testimony and demeanor of the witnesses, must in each case determine whether an infringer has discharged its affirmative duty of exercising due care. Here, the district court found, in light of the totality of the circumstances, that GTE had recognized and discharged that duty. *See also Radio Steel & Manufacturing Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1558–59, 229 USPQ 431, 434–35 (Fed.Cir. 1986). Though the question is not totally free of doubt, that finding has not been shown to have been clearly erroneous.[9] Rolls-Royce urges this court to draw an adverse inference from GTE's obtaining of counsel's opinion that an earlier (Miller) device infringed the '998 patent, abandoning that device in light of that advice, and then *not* obtaining counsel's opinion in respect of the Cusack reed-probe, particularly in light of its claimed "concern" over avoidance of infringement. The argument is not without some merit. Infringers should not escape a finding of willfulness by merely denying themselves counsel's advice while relying on opinions of lay-employees.

Whether this court, if sitting at trial, would have drawn the inference sought by Rolls-Royce is of no moment. The district court heard Sears' firm testimony, unshaken on re-direct, that GTE did not "copy" and was attempting to design around the patent. That Rolls-Royce failed to establish willfulness in GTE's failure to obtain counsel's advice on whether its attempt was successful cannot be cured on appeal.

This court does not sit to reweigh the evidence presented to the district court, nor will it draw its own inferences, nor make its own fact findings. It will not reverse unless the inferences drawn and facts found by the trial court are on the full record so unsupported as to have been the result of clear error. The drawing of inferences, particularly in respect of an intent-implicating question such as willfulness, is peculiarly within the province of the fact finder that observed the witnesses. Lastly, as above indicated, where two interpretations or inferences are permissible, this court must not substitute its evaluation of testimony for that of the district court. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. at 573–74, 105 S.Ct. at 1512. Rolls-Royce's contentions were fully presented to the district court, which declined to draw the inference sought. Nothing in this record compels us to do so.

Accordingly, the portion of the judgment based on the finding of non-willfulness is affirmed.

## VI. *Exceptional Case*

Rolls-Royce asserts that allegedly baseless defenses and contentions raised by GTE required a finding of exceptional case and an award of attorney fees.[10] The district court, in the best position to view and adjudge the conduct of the par-

9. GTE attempts to bring itself within the parameters of *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 226 USPQ 402 (Fed.Cir.1985), saying the district court "could" have inferred that GTE reasonably believed it was not infringing in view of its patent on the accused device. That patent, however, did not issue until almost two years *after* GTE's infringement began. In any event, that someone has a patent right to exclude others from making the invention claimed in his patent does not mean that his invention cannot infringe claims of another's patent broad enough to encompass, i.e., to "dominate", his invention.

10. Rolls-Royce cites instances in which it says GTE filed allegations without adequate investigation, and defenses abandoned at trial. The record does not reflect that Rolls-Royce moved the district court for application of sanctions under Rule 11, Fed.R.Civ.P. In all events, the conduct attributed to GTE's counsel would be an affront to the district court, whose findings indicate that it did not consider that conduct sufficiently an affront to make the case before it exceptional. In declining to find abuse of discretion on the part of the district court, we do not thereby condone the conduct described in ten pages of Rolls-Royce's brief. GTE ignored all but two of the listed instances of litigation misconduct, responding to those two disingenuously. The filing of numerous unfounded defenses, followed by a failure to press them at trial, is an abuse of the judicial process at the trial level.

ties, and the most injured by misconduct at the pretrial and trial stages, said "the Court cannot find that the actions of defense counsel added up to bad faith, fraud, malice, or other similar concepts," and that "it is clear that attorney fees may not be awarded." Though bad faith, fraud, and malice are not required, and misconduct (e.g., frivolity; harassing tactics) may suffice, the district court presumably included the latter in "other similar concepts." Rolls-Royce has not shown the district court's findings on the nature of defense counsel's actions to have been clearly erroneous, thus we need not reach whether the district court abused its discretion in declining to award attorney fees. *See Porter v. Farmers Supply Service, Inc.*, 790 F.2d 882, 886–87, 229 USPQ 814, 817 (Fed.Cir. 1986). The refusal to find this an exceptional case under 35 U.S.C. § 285, and the consequent denial of attorney fees, are accordingly affirmed.

The parties to this appeal and cross-appeal will pay their own costs.

AFFIRMED.