69 F.3d 553
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Pedro A. RAMOS, M.D., Plaintiff-Appellee,
v.
BIOMET, INC., Defendant-Appellant.
 Nos. 94-1004, 94-1129.
 United States Court of Appeals, Federal Circuit.
 Sept. 8, 1995.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Oct. 24, 1995.
 
 Before NEWMAN, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 Biomet, Inc. (Biomet) appeals the judgment[1] of the United States District Court for the Southern District of Florida, holding that Biomet infringed United States Patent No. 4,380,090, inventor Dr. Pedro A. Ramos. The judgment of infringement is affirmed; the judgment of willful infringement is reversed.
 
 BACKGROUND
 
 2
 The Ramos '090 patent relates to a hip prosthesis, and issued on April 19, 1983. On March 23, 1983, after requesting and being given assurance by Biomet that it had no design for a bipolar hip prosthesis under research, development, manufacture, or production, Dr. Ramos disclosed his allowed patent application and hip prosthesis to Biomet's Vice President of Technical Affairs. On March 29, 1983, Biomet wrote to Dr. Ramos stating that they "will be reviewing and discussing your universal hip prosthesis development over the next few weeks." On May 6, 1983, Biomet wrote of its "continue[d] interest," and stated: "After having it reviewed by our patent council [sic], they have requested that we provide them with a file history and copy of all the prior art references with which you are familiar." Dr. Ramos sent copies of "all the references that I went through," and a copy of the issued '090 patent. On June 7, 1983, Biomet wrote that the patent and references had gone to its patent counsel, and asked for "the application file history including copies of the application as filed, Office actions issued by the Patent Office and response filed by your attorney, Mr. Barnett." Dr. Ramos sent these documents on July 12, 1983. The district court, in making these findings, remarked that Biomet never again communicated with Dr. Ramos or his attorney.
 
 
 3
 In July 1983 Biomet hired Tony Fleming, who testified that by the end of July 1983 he had designed the bipolar hip prosthesis in suit, and that he had not previously designed a hip prosthesis. The district court found that "every element and function of Claim 1 of the '090 patent is present" in the Biomet prosthesis.
 
 
 4
 The artificial hip claimed in the Ramos '090 patent consists of an outer acetabular cup, a bearing insert consisting of an inner and outer section, a locking ring, and a femoral ball component. As assembled, the outer cup fits into the hip socket, the inner bearing insert is placed inside the outer cup, the femoral ball component fits inside the inner bearing insert section, and the outer bearing insert section fits over the ball. When the hip is assembled, the locking ring abuts the outer bearing insert section and holds the components of the hip together.
 
 
 5
 The Biomet hip prosthesis consists of an outer acetabular cup, a one piece bearing insert, a locking ring, and a femoral ball component. As assembled, the outer cup fits into the hip socket, the one-piece bearing insert is placed inside the outer cup, the femoral ball component fits inside the bearing insert, and the locking ring abuts the bearing insert and holds the components of the hip together.
 
 INFRINGEMENT
 
 6
 Dr. Ramos sued Biomet for infringement of claims 1 and 3 of the '090 patent. After full trial the district court ruled that claims 1 and 3 "may literally be read upon the accused Biomet BiPolar hip prosthesis and unquestionably the accused Biomet BiPolar hip prosthesis is an infringing equivalent of the invention claimed in those claims."
 
 
 7
 Determination of infringement is a two-step process. First, the claims are construed, a matter of law, and second, the trier of fact compares the correctly construed claims with the accused device. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (en banc ). In accordance with Markman, we conduct de novo review of the district court's claim construction. Claim 1 reads as follows:
 
 1. An artificial hip joint comprising
 
 8
 an artificial hip socket having a first cavity and an opening in a surface of the socket communicating with the first cavity,
 
 
 9
 an annular groove formed in the first cavity adjacent said opening,
 
 
 10
 a sectionalized bearing insert registerably positioned in the first cavity inwardly of said groove,
 
 
 11
 said bearing insert having a second cavity of spherical configuration greater in scope than hemispherical,
 
 
 12
 a femoral component having a ball extending from a neck of reduced diameter,
 
 
 13
 said neck extending through said socket opening positioning said ball in operative, retained engagement in said second cavity,
 
 
 14
 said bearing insert having inner and outer sections, each section being formed with a complementary component of said second cavity,
 
 
 15
 the cavity component of said inner section being approximately hemispherical,
 
 
 16
 said outer section being annular in shape and having an outer surface portion opposite the cavity component thereof adapted to align with said annular groove when said outer section is in operative position in said first cavity,
 
 
 17
 and an open annular spring locking ring having opposite ends formed with tool engaging openings,
 
 
 18
 said locking ring being removably engaged in said annular grove in abutment with said outer surface portion of the bearing insert outer section,
 
 
 19
 said locking ring, when in said groove engagement, being visibly exposed and removably retaining said annular outer section in said first cavity in operative engagement with the inner section whereby said ball is retained in said second cavity,
 
 
 20
 said annular outer section being formed to expand over said ball when the latter is removed from said first cavity.
 
 
 21
 [Claim paragraphing added.]
 
 
 22
 Biomet argues that the district court erred in holding that claim 1 does not require the locking ring and outer bearing section to be separate. We agree that the literal reading of the claim requires separate components, and that the district court erred to this extent. However, the district court viewed the Biomet device as simply merging into a single piece the components that Dr. Ramos described as separate but abutting pieces. Such a view is a matter of equivalency, not literal infringement. See Builder's Concrete, Inc. v. Bremerton Concrete Prods. Co., 757 F.2d 255, 257, 225 USPQ 240, 241 (Fed.Cir.1985) ("Literal infringement requires that the accused device embody every element of the claim.")
 
 
 23
 Infringement under the doctrine of equivalents is a question of fact, and is reviewed for clear error. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609-10, 85 USPQ 328, 331 (1950); Hilton Davis Chem. Co. v. Warner-Jenkinson Co., Inc., No. 93-1088, 1995 WL 468346, at * 7 (Fed.Cir. Aug. 8, 1995) (en banc ). In accordance with the doctrine of equivalents, infringement may be found if the accused device is substantially the same as the claimed invention. When elements that are claimed separately are combined, without change of function, as in Sun Studs, Inc. v. ATA Equipment Leasing, Inc., 872 F.2d 978, 989, 10 USPQ2d 1338, 1347 (Fed.Cir.1989), equivalency may be found.
 
 
 24
 The district court found that "[a]ll ... equivalent elements, which perform substantially the same function in substantially the same way to the same result of Claim 1 of the '090 patent are present in the Biomet BiPolar hip prosthesis." The court correctly stated the law that in some cases "[i]nfringement is not avoided by making into one part that which has been shown as two." The district court concluded that the Biomet locking ring performed the functions of the '090 patent's locking ring and outer bearing section, stating that Biomet had "merged" two functions into one component.
 
 
 25
 At trial, the parties disputed whether the Biomet locking ring performs both a bearing function and a locking function. Biomet does not dispute that its locking ring performs a locking function similar to that of the '090 patent locking ring. There was testimony at trial that at certain configurations the Biomet locking ring does perform a bearing function. Biomet states that the Biomet locking ring is made of polyethylene, which the '090 patent describes as the preferred material for the outer bearing. See col. 1, lines 65-68 ("the bearing material is preferably made of a low friction plastic (e.g., high molecular weight polyethylene) having a slight flexibility.") In contrast, the preferred material for the locking ring in the '090 patent is "a resistant metal." Biomet did not overcome Dr. Ramos' position that during certain types of motion the Biomet locking ring contacts the femur ball and supplies enough force to prevent dislocation of the ball from the acetabular shell. The district court's finding that the Biomet "locking ring" functions as both an outer bearing section and a locking ring supports the court's finding that it performs the same function in substantially the same way as the separate components in the '090 patent. On the evidence before the court, Biomet has not shown that the district court's finding of infringement was clearly erroneous.
 
 WILLFULNESS
 
 26
 The district court found that Biomet willfully infringed the '090 patent, taking note of the circumstances of Biomet's relationship with Dr. Ramos, and Biomet's failure to present evidence that it relied on the advice of competent counsel before beginning its infringing activities. We review the district court's finding of willful infringement under the clearly erroneous standard. Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1104, 231 USPQ 185, 187 (Fed.Cir.1986).
 
 
 27
 When "a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing." Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1389, 219 USPQ 569, 576 (Fed.Cir.1983). Although this duty usually includes obtaining competent legal advice before infringing or continuing to infringe, absence of a legal opinion is not per se "willfulness." Rolls-Royce, 800 F.2d at 1109, 231 USPQ at 191. All of the circumstances must be considered.
 
 
 28
 It is undisputed that Biomet had notice of Dr. Ramos' patent. Biomet concedes that it did not place in evidence an opinion of counsel which it sought before manufacturing its hip prosthesis, but argues that it believed that it had designed a non-infringing product. Although we have affirmed the district court's finding of infringement, the infringement is not literal. The district court's finding of willful infringement may have been based in part on the clearly erroneous finding that the Biomet device literally infringed the '090 patent.
 
 
 29
 "Designing around" a patented product is not intended to be discouraged by the patent system, although it often raises close questions and conflicting policy considerations. We think that only in egregious situations should punitive damages be awarded when there has been made a reasonable attempt to avoid a patent's claims. See State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236, 224 USPQ 418, 424 (Fed.Cir.1985). Such an attempt is reflected in the change made by Biomet which, although insufficient to avoid infringement under the doctrine of equivalents, we conclude avoids the charge of willful infringement, and the ensuing multiplication of damages. The finding of willfulness is reversed.
 
 LACHES
 
 30
 The district court held that Biomet did not carry its burden of persuasion in demonstrating that the affirmative defense of laches applied in this case. We review the district court's decision of this issue for abuse of discretion. A.C. Auckerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032, 22 USPQ2d 1321, 1328 (Fed.Cir.1992) (en banc ).
 
 
 31
 To invoke the laches defense, the defendant has the burden of proving that the plaintiff delayed for an unreasonable length of time in filing suit and that the delay caused prejudice or injury to the defendant. Auckerman, 960 F.2d at 1032, 22 USPQ2d at 1328. However, a patentee may defeat a laches defense if the patentee can prove that the accused infringer "was itself guilty of misdeeds towards the patentee." Auckerman, 960 F.2d at 1038, 22 USPQ2d at 1333. In deciding that Biomet had not met its burden, the district court relied on its findings that Dr. Ramos acted with "reasonable diligence," and Biomet's failure to present evidence that, based on advice of legal counsel, it had a good-faith belief of non-infringement.
 
 
 32
 Biomet has not shown that the district court abused its discretion. Because laches is an equitable defense, its determination depends on the particular facts and equities of the case. Bott v. Four Star Corp., 807 F.2d 1567, 1576, 1 USPQ2d 1210, 1216-17 (Fed.Cir.1986). Biomet argues that it was prejudiced because "[f]rom 1983 through 1990, Biomet's sales and expenses relating to the accused device increased." However, economic prejudice does not arise merely because infringing activity was carried on during the period of delay. Auckerman, 960 F.2d at 1033, 22 USPQ2d at 1329. Biomet has not demonstrated that it made a disadvantageous change in its economic position during that period. Id.
 
 
 33
 Biomet also argues that it was prejudiced because the attorney who prosecuted Dr. Ramos' patent application died in 1988. Biomet does not state how this prejudiced its case for, as Dr. Ramos points out, the prosecution history was available. Further, the district court's finding that Biomet's behavior toward Dr. Ramos was egregious enough to bar the laches defense is not contested on this appeal.
 
 
 34
 The decision that laches does not bar this suit is affirmed.
 
 Motions
 
 35
 Biomet's motion for leave to file a supplemental brief is granted. However, we do not accept Biomet's suggestion that this court should rely on evidence adduced in a later trial, but a different defendant, for a different device.
 
 Costs
 
 36
 No costs.
 
 
 
 [1]
 Ramos v. Biomet, Inc., No. 90-0147-CIV (S.D.Fla. Sept. 10, 1993, amended Nov. 30, 1993)